**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-CV-02058 CMA-KLM

GATES CORPORATION, a Delaware Corporation;

    Plaintiff,

v.

DORMAN PRODUCTS, INC., a Pennsylvania Corporation,

    Defendant.

---

**OPINION AND ORDER REGARDING DEFENDANT
DORMAN PRODUCTS, INC.'S MOTION TO DISMISS**

---

This matter is before the Court on Defendant Dorman Products, Inc.'s Motion to Dismiss (Doc. # 8). This is a lawsuit alleging claims for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1), deceptive trade practices in violation of C.R.S. § 6-1-105, and unfair competition. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), and 1367(a) (supplemental). For the reasons stated below, the Court DENIES Defendant Dorman Products, Inc.'s Motion to Dismiss insofar as it relates to Claims I-V and GRANTS Defendant's Motion insofar as it relates to Claim VI.

## I. **BACKGROUND**

**A.     FACTS**

For purposes of Defendant's Motion, all well-pleaded facts in the Complaint (Doc. #1) are assumed to be true, and all reasonable inferences therefrom are drawn in the light most favorable to Plaintiff. Accordingly, the following facts must be taken as true:

Plaintiff, Gates Corporation, is a world leader in the manufacture and supply of quality automotive products. In or about 1984, Plaintiff began manufacturing automatic belt tensioners for OEM's (original equipment manufacturers) and the automotive aftermarket.[1]

Defendant, Dorman Products, Inc., began offering for sale and selling certain automatic belt tensioners for the automotive parts aftermarket in early 2009. Defendant's advertising and marketing materials claim that its belt tensioners "[Meet] All SAE Specifications."[2] An image of a representative advertisement is included in the Complaint.

---

[1] A belt tensioner is a device that presses against a belt carrying rotary power from the engine crankshaft to automotive subsystems, such as the power steering or water pump, to maintain proper belt tension and thus ensure non-slip engagement and proper operation of the subsystems.

[2] SAE International ("SAE") is a professional organization for mobility engineering professionals in the aerospace, automotive, and commercial vehicle industries. SAE is a standards development organization for the engineering of powered vehicles of all kinds. SAE has created 2,600-plus global standards for the automotive, construction and agricultural equipment, heavy trucks, buses and specialty vehicle industries. More than 7,000 experts provide data for standards in this industry. It is important for a manufacturer of automotive components to be able to claim that its components meet SAE standards.

Plaintiff alleges that Defendant's claims that its belt tensioners "[Meet] All SAE Specifications" are false and misleading. Plaintiff has conducted tests on various belt tensioners of Defendant and has found that, at a minimum, a substantial number have failed the "Snap Test" of SAE Specification J2436.[3]

Defendant also markets its products under the alleged trademark "OE Solutions." Upon information and belief, it additionally uses the phrases, "OE Quality" and "OE Performance," in its marketing literature to describe the quality of its belt tensioners.[4] Often standards set by automobile manufacturers for OE equipment are higher than standards set for the aftermarket.

Plaintiff alleges that Defendant's use of "OE" is false and/or misleading because Defendant does not manufacture OE belt tensioners to the automotive OE customers and does not sell OE belt tensioners in the aftermarket. It only sells belt tensioners in the aftermarket.  An image of a representative advertisement containing the use of "OE Solutions" is included in the Complaint.

Plaintiff alleges it has suffered loss of profits and other damages and Defendant has earned illegal profits as the result of Defendant's false and misleading acts**.**

---

[3] SAE Specification J2436 stipulates "test procedures and set-ups that address known failure modes for mechanical rotary tensioners and establish minimum acceptance criteria."

[4] "OE" is well-known in the automotive industry to mean "original equipment," that is, equipment manufactured by one company and sold to another company that manufactures vehicles, like, for example, Ford Motor Company.

**B.    PROCEDURAL HISTORY**

Plaintiff filed its Complaint in this case on August 28, 2009.  (Doc. # 1.) Defendant filed its Motion to Dismiss on September 22, 2009 (Doc. # 8), Plaintiff responded on October 13, 2009 (Doc. # 10), and Defendant replied on November 17, 2009 (Doc. # 24).

## II. STANDARD OF REVIEW

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007).  The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence but rather to assess whether the claimant is entitled to even offer evidence.  *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003); *Abell v. Sothen*, 214 Fed. Appx. 743, 750 (10th Cir. 2007) (citations and quotation marks omitted.)

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1006, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court, however, "need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

### III. ANALYSIS

Plaintiff's Complaint contains six claims for relief. The first three claims involve federal questions. Specifically, the first three claims are for false advertising under 15 U.S.C. § 1125(a)(1). The next two claims are for deceptive trade practices in violation of C.R.S. § 6-1-105. The last claim is for common law unfair competition. Defendant's Motion requests dismissal of all claims.

**A.  FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1) (Claims I-III)**

Plaintiff alleges that Defendant violated 15 U.S.C. § 1125(a)(1) by: (1) representing that their belt tensioners meet "[a]ll SAE specifications," (2) marketing its

products, including its belt tensioners, under the alleged trademark "OE Solutions," and (3) claiming that its belt tensioners are "OE Quality," meet "OE Performance," and are "as good as OE."  (Doc. # 1, ¶¶ 19, 25, 32.)

15 U.S.C. § 1125(a)(1) provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>     (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>     (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

In order to survive a motion to dismiss, a party bringing a claim under Section 1125(a)(1) must plead facts sufficient to show that[5]:

> (1) defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about its own or another's product;
> (2) the misrepresentation is material, in that it is likely to influence the purchasing decision;
> (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of the audience;

---

[5] Defendant in its Reply argues that this Court should apply Fed. R. Civ. P. 9(b) to claims of false advertising under 15 U.S.C. § 1125 when those claims sound or are grounded in fraud.  The 10th Circuit appears not to have addressed the issue.  However, in this case, because the heightened pleading requirement would not change the result, this Court is not compelled to make a determination on this issue.

> (4) the defendant placed the false or misleading statement in interstate commerce; and
> (5) plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

See *Zoller Laboratories, LLC v. NBTY, Inc.*, 111 Fed. Appx. 978, 982 (10th Circuit 2004).

In support of element one (1) insofar as it relates to Claim I, Plaintiff alleges that it has conducted tests on Defendant's various belt tensioners and has found that, at a minimum, a substantial number have failed the "Snap Test" of SAE Specification J2436. (Doc. # 1, ¶ 14.) In support of element one (1) insofar as it relates to Claims II and III, Plaintiff alleges that "Defendant's use of "OE" is false and/or misleading because Defendant does not manufacture OE belt tensioners to the automotive OE customers and does not sell OE belt tensioners in the aftermarket. It only sells belt tensioners in the aftermarket." (*Id.,* ¶ 15.) Further, next to both of these allegations Plaintiff includes an image of a representative advertisement that shows use of these terms. (*Id.* at 4 and 5.) Accordingly, this Court finds that Plaintiff has pled facts sufficient to show that defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about its products.

In support of element two (2) insofar as it relates to Claim I, Plaintiff alleges that "[i]t is important for a manufacturer of automotive components to be able to claim that its components meet SAE standards." (*Id.,* ¶ 11.) In support of element two (2) insofar as it relates to Claims II and III, Plaintiff alleges that "original equipment" standards are

often higher than "SAE standards." (*Id.,* ¶ 15.) It is a reasonable assumption that the quality of a product influences a consumer's purchasing decision. Accordingly, the Court finds that these facts are likely to influence a consumer's purchasing decision and are, therefore, material.

In support of element three (3), Plaintiff relies on the allegations in support of element two (2), as well as its contention that Defendant's representations are literally false. The type of misrepresentation sufficient to show consumer deception depends on whether the advertising is deemed literally false or merely misleading. *See Zoller Labs*, 111 Fed. Appx. at 982. "Where the advertisement is literally false, a violation may be established without evidence of consumer deception." *Id.* Further, element three (3) requires that Plaintiff plead facts sufficient to show that the misrepresentation actually deceives *or has the tendency to deceive* a substantial segment of the audience. Plaintiff has alleged that it is important for a manufacturer to be able to claim that its products meet SAE standards. (*Id.,* ¶ 11.) Plaintiff has also alleged that OE standards are higher than SAE standards. (*Id.,* ¶ 15.) On this basis, it is plausible that there is a likelihood of deception if consumers bought products because of the manufacturer's claims that those products met certain standards. Additionally, Plaintiff here cannot be expected to present detailed evidence in its Complaint on the nuances of consumer confusion, such as survey evidence, when element three (3) only requires a "tendency to deceive." Discovery is the proper phase in which to receive this information. Accordingly, this Court finds that Plaintiff has pled facts sufficient to show the

misrepresentation actually deceives or has the tendency to deceive a substantial segment of the audience.

As to element four (4), there is no dispute that Defendant placed the allegedly false or misleading statements in interstate commerce.

In support of element five (5), Plaintiff rests on the fact that it is a direct competitor of Defendant. At this stage, Plaintiff need not prove that customers have already been lost. The statute only requires a "likelihood of harm." Because Plaintiff is a direct competitor of Defendant, it is plausible that Plaintiff would suffer harm if Defendant exaggerated the quality of its products. Accordingly, the Court finds that Plaintiff has pled facts sufficient to show a likelihood of harm.

For the foregoing reasons, the Court finds that Plaintiff has pled facts sufficient to state a claim of false advertising under 15 U.S.C. § 1125(a)(1).

**B.   DECEPTIVE TRADE PRACTICES IN VIOLATION OF C.R.S. § 6-1-105 (Claims IV and V)**

Plaintiff alleges in Claim IV that Defendant made false and/or misleading statements of fact concerning the advertised belt tensioners meeting "All SAE Specifications" with intent not to sell them as advertised. (*Id.* at 9.) In Claim V, Plaintiff alleges that Defendant made false and/or misleading statements of fact concerning Defendant's belt tensioners as original equipment ("OE") with the intent not to sell them as advertised. (*Id.* at 9-10.) Plaintiff states that Defendant's acts were willful and deliberate, and thus alleges that Defendant's conduct constitutes deceptive trade practices.

Defendant contends that Plaintiff has failed to plead in Claims IV and V the specific subsection of C.R.S. § 6-1-105 that Defendant allegedly violated, and that Plaintiff speculates that Defendant willfully and deliberately acted. Defendant has cited no authority to support its position that Plaintiff must plead the specific subsection of a statute, and the Court is aware of none. Additionally, the Court presumes that Plaintiff has a good faith basis for its willfulness allegation per Fed. R. Civ. P. 11(b), and that this allegation is not based on speculation.

The elements of a claim under C.R.S. § 6-1-105 (the Colorado Consumer Protection Act ("CCPA")) are:

> (1) that the defendant engaged in an unfair or deceptive trade practice;
> (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;
> (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
> (4) that the plaintiff suffered injury in fact to a legally protected interest; and
> (5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003) (internal quotation marks omitted). Such a claim must be pled with particularity pursuant to Fed. R. Civ. P. 9(b). *See Cavitat Med. Techs., Inc. v. Aetna, Inc.,* No. 04-CV-01849, 2006 WL 218018 at *3 (D. Colo. Jan. 27, 2006) (holding that claims under § 6-1-105 of the Colorado Consumer Protection Act must be pled with particularity pursuant to Fed. R. Civ. P. 9(b)); *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985) (holding that "Rule 9(b)'s requirement of particularity

applies to a plaintiffs' allegations of deceptive trade practices under the Colorado Consumer Protection Act.")

Here, Plaintiff has alleged that Defendant engaged in an unfair or deceptive trade practice (false and/or misleading advertising) (Doc. # 1, ¶¶ 12-16); that it was done in connection with Defendant's business (*Id.*, ¶¶ 12, 15); that it significantly impacts the public (*Id..* ¶ 20); that Plaintiff has suffered injury (*Id.,* ¶¶ 16, 17, 20); and that Defendant's conduct caused the injury (*Id.,* ¶¶ 16, 20).

For the foregoing reasons, this Court finds that Plaintiff has pled facts sufficient to state a claim for deceptive trade practices under C.R.S. § 6-1-105.

### C. COMMON LAW UNFAIR COMPETITION (Claim VI)

Plaintiff alleges that Defendant's acts are likely to deceive the public and therefore constitute unfair competition. (*Id.,* ¶ 47.) Plaintiff also alleges that Defendant's act were wilful, deliberate, and that they have caused harm and will cause damages and irreparable harm to Plaintiff. (*Id.,* ¶ 48-49.)

Defendant contends that Plaintiff's allegations do not fall within the parameter of the tort of common law unfair competition in Colorado. For the following reasons, this Court agrees.

In *Netquote v. Byrd*, the Court elaborated on what types of allegations fall within the parameter of the tort of common law unfair competition. 504 F. Supp. 2d 1126, 1133 (D. Colo. 2007). The Court stated:

> the tort of unfair competition in Colorado has not been expanded to provide
> a cause of action for any alleged improper conduct by a competitor that

>deceives a plaintiff or its clients. Instead, it reaches only conduct that involves either using or copying a plaintiff's products or its services and deceiving or confusing the public as to the source of the business in question.

*Id.*

In the instant case, Plaintiff has not alleged any conduct on the part of Defendant that involves either using or copying Plaintiff's products or its services. Plaintiff has also not alleged that Defendant deceived or confused the public as to the source its products.

For the foregoing reasons, this Court finds that Plaintiff has failed to plead facts sufficient to state a claim for common law unfair competition.

## IV.  CONCLUSION

Based on the foregoing, the Court ORDERS that Defendant Dorman Products, Inc.'s Motion to Dismiss (Doc. # 8) is DENIED insofar as it relates to Claims I-V and GRANTED insofar as it relates to Claim VI.

DATED:  December   18  , 2009

                                    BY THE COURT:

                                    *[signature: Christine M. Arguello]*
                                    _____
                                    CHRISTINE M. ARGUELLO
                                    United States District Judge